# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MICHAEL J. MARTIN,

                    Petitioner,           :    Case No. 3:19-cv-189

      - vs -                                District Judge Walter H. Rice
                                            Magistrate Judge Michael R. Merz

Warden,
   London Correctional Institution,

                                      :

                    Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits on the Petition (ECF No. 1), the Return of Writ (ECF No. 11), the State Court Record (ECF No.10), and Petitioner's Reply (ECF No. 21).

## Litigation History

Petitioner was indicted by a Montgomery County grand jury on April 6, 2016, and charged two counts of felony murder, four counts of felonious assault, and one count of discharging a firearm at or near a prohibited premise. Each of the counts had a firearm specification and a specification for discharging a firearm from a motor vehicle. He was also charged with improper handling of a firearm in a motor vehicle and having a weapon while under disability (State Court Record, ECF No. 10, PageID 75-83). A jury found him guilty of two counts of murder, two counts

1

of felonious assault, and discharging a firearm at or near a prohibited premise, along with the firearm specifications and improper handling of a firearm in a motor vehicle. Martin had waived a jury trial on the weapons under disability count and the trial judge separately found him guilty of that offense. *Id*. at PageID 96-123.. Martin received an aggregate sentence of thirty years to life imprisonment. *Id.* at PageID 126-28.

Martin appealed to the Second District Court of Appeals which affirmed the trial court's judgment. *State v. Martin,* No. 27220, 2017-Ohio-7431 (Ohio App. 2nd Dist. Sep. 1, 2017) ("*Martin I*"), appellate jurisdiction declined, 151 Ohio St.3d 1514, 2018-Ohio-365. Martin filed an Application to reopen the direct appeal under Ohio R.App.P. 26(B) (State Court Record, ECF No. 10, PageID 226-34,) which the Second District, *per curiam*, denied on the merits. *Id.* at PageID 244-52. The Supreme Court of Ohio declined to exercise appellate jurisdiction. *State v. Martin*, 152 Ohio St. 3d 1467, 2018-Ohio-1795.

Martin also filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 raising claims of ineffective assistance of trial counsel and prosecutorial misconduct (State Court Record, ECF No. 10, PageID 290-97). The trial court denied relief, *id*. at PageID 311-14, and Martin appealed, but the Second District affirmed. *State v. Martin*, No. 27844, 2018-Ohio-3505 (Ohio App. 2nd Dist. Aug. 31, 2018) ("*Martin II*"), appellate jurisdiction declined, 154 Ohio St. 3d 1465, 2018-Ohio-5209. Martin asked the Second District to reconsider its decision under Ohio R.App.P. 26(A), but the court, *per curiam*, denied the application on the merits, concluding Martin failed to provide evidentiary support for a claim of prosecutorial misconduct and there was nothing in the record to suggest that the witnesses Busbee and Soles knowingly provided false testimony at trial or that the prosecutor allowed the state's witnesses to present perjured testimony (State

Court Record, ECF No. 10, PageID 421-24), appellate jurisdiction declined, *State v. Martin,* 154 Ohio St. 3d 1482, 2019-Ohio-173 (2019).

On September 21, 2018, Martin filed a motion for leave to file a delayed motion for new trial (State Court Record, ECF No. 10, PageID 458-96. The trial court denied the motion, *id*. at PageID 508-14, and the Second District, *per curiam*, dismissed the appeal therefrom as untimely. *Id.* at PageID 525-27. Martin filed a prior habeas corpus petition in this Court, which was dismissed without prejudice on his motion. *Martin v. Warden*., No. 3:19-cv-42, 2019 U.S. Dist. LEXIS 34525 (S.D. Ohio Mar. 5, 2019) (Merz, Mag. J.).

Martin filed the instant Petition on June 14, 2019, pleading the following grounds for relief:

> **Ground One**: Defendant-Appellant was deprived of due process and a fair trial through incomplete, inaccurate, and misleading jury instructions in violation of his 5th, 6th and 14th amendment rights of the U.S. Constitution.

> **Supporting Facts:** The Appellant never asserted self-defense under O.R.C. 2901.05 (A). This jury instruction was only given to deprived (sic) the Appellant-Defendant a fair trial. There was (NO) testimony in the record to justify giving such an instruction[s]. The Trial court only gave it to punish the petitioner for exercising his constitutional right to a speedy trial, in violation of his 5th U.S. Constitutional rights.

> **Ground Two:** Defendant-Appellant was denied effective assistance of trial counsel in violation of Appellant's 6th and 14th amendment rights of the U.S. Constitution.

> **Supporting Facts:** Trial Counsel purposely fail[ed] to object to the jury instructions, knowing the only defense the Defendant was asserting was the Castle Doctrine under O.R.C. 2901.05(B) and not 2901.05 (A). Trial Counsel fail[ed] to subject the prosecution to any meaningful adversarial challenges, aiding in his conviction for murder and the underlying offenses.

> **Ground Three:** Defendant-Appellant's conviction[s] was against the manifest weight of the evidence which violated his 14th amendment right of the U.S. Constitution.

**Supporting Facts:** The evidence at trial did not support the convictions for murder and the underlying offenses of Mr. Gary L. Tisdale. Under the Castle Doctrine O.R.C. 2901.05 (B), the defendant had a right to defend his-self (sic) under the law.

**Ground Four:** Appellate Counsel was ineffective for failing to raise structural or plain error under criminal RULE 52(B) When the trial court failed to properly instruct the jury on the state's burden of proof in showing that Appellant was not acting under the Castle Doctrine 2901.05 (B) and 2901.09, as Appellant was inside his car, had a reasonable belief of danger or great bodily harm and therefore had no duty to retreat nor was the burden on Appellant to prove he acted under the Castle Doctrine 2901.05 (A) and 2901.09, as requested by trial Counsel; Appellant was denied due process of law and a fair trial, in violation of the Ohio and United States Constitution.

**Supporting Facts:** Criminal Rule 52 (B) or structural error should have been part of the Appellant's direct appeal under the circumstances; the Defendant never asserted self-defense under 2901.05(A). The (only) Defense the defendant asserted at trial was the Castle Doctrine O.RC. 2901.05 (A). The (only) Defense the defendant asserted at trial was the Castle Doctrine O.R.C. 2901.05 (B) Appellant suggested strongly to Appellate Counsel many times to appeal the case to in that manner; but [appellate counsel] fail[ed] to do so.

**Ground Five:** Appellate Counsel was ineffective for failing to raise the trial court's error under crim. R. 43 (A) for not obtaining a valid waiver for Appellant['s] non appearance and not informing Appellant of his hearing rights, denying Appellant [the] right to due process of a fair and just hearing in violation of the U.S. and Ohio Constitution[s].

**Supporting Facts:** Appellant was not allow[ed] to participate in a crucial hearing where jury instructions [was] consider[ed] without the known (sic) of the Defendant, making him unknowing that a Self-Defense instruction[s] under O.R.C. 2901.05 (A) was even under consideration. The Appellant had a Constitutional right to be there, especially when 55 plus years to life was at stake. The Appellant would had objected to (any) jury instruction[s] under O.R.C. 2901.05 (A), but was not allow[ed] to attend that crucial hearing.

**Ground Six:** Petitioner was denied effective assistance of trial counsel due to counsel's failure to impeach states witnesses Lisa Busbee and Elbert Soles with their prior statements made during 22 police interrogations. Those statement contradict[s] their trial testimony, in violation of petitioner's 6th amendment right of the U.S. Constitution.

**Supporting Facts:** Trial Counsel had in his possession, a police interrogation video tape of Lisa Busbee and a police report of Elbert Soles that should had been introduced at trial; showing that both State's witnesses [was] less than truthful in their Trial testimony. However, beyond this Appellant understanding said highly exculpatory and favorable rebuttal evidences should had been introduced at trial. (sic)

**Ground Seven:** Petitioner was denied effective assistance of trial counsel due to trial counsel's failure to clarify who petitioner was referring to in the messenges (sic) he left on Lisa Busbee['s] voice-mail, in violation of petitioner's 6th amendment right of the U.S. Constitution.

**Supporting Facts**: Trial Counsel fail[ed] to clarify a voice-mail left on Lisa Busbee['s] phone that had (NOTHING) to do with this case in any way. The Appellant knew of Miss Busbee['s] situation of being home-less for years and knew of all of her children['s] fathers. The Appellant was referring to one Dontavious Brown and no one else.

**Ground Eight:** Petitioner's 5th and 14th amendment rights of the U.S. Constitution were violated due [to] the Prosecutorial misconduct committed by the Prosecution, when the Prosecutor failed to correct the testimony given by state's witnesses Lisa Busbee and Elbert Soles.

**Supporting Facts:** asst (sic) Montgomery county prosecutor Lynda A. Dodd turned over during discovery a police interrogation video tape of Lisa Busbee conducted by DET Thomas Cope; and a written police report by DET David House of Elbert Soles Clearly showing both state's witnesses [was] untruthful at trial and did nothing to correct[ed] the untruthful testimony. The State of OHIO has a duty to protect the U.S. and Ohio Constitution to a higher degree that the citizenry of the state, but when it fails its duty only to obtain un unjust conviction, that said conviction should not stand.

(Petition, ECF No. 1, PageID 4-6) (as appears in original).

# Analysis

**Ground One:  Error in Jury Instructions**

In his First Ground for Relief, Martin claims the jury instructions on the Castle Doctrine and self-defense were erroneous and misleading.  Martin raised this claim on direct appeal as his First Assignment of Error and the Second District decided it as follows:

> *Jury Instructions*
>
> **{¶ 38}** In his first assignment of error, Martin contends that the jury instructions were incomplete, inaccurate, and misleading with respect to the "castle doctrine" and the duty to retreat before acting in self-defense. At oral argument, Martin's appellate counsel stated, somewhat more specifically, that the manner or order in which the jury instructions on self-defense were given created confusion.
>
> **{¶ 39}** In Ohio, self-defense has three elements: 1) the defendant did not create the violent situation, 2) the defendant had a bona fide belief that he was in danger of death or great bodily harm and that the only way to escape was the use of force, and 3) that the defendant did not violate any duty to retreat. *State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990). The castle doctrine, on which Martin's defense relied, relates to the applicability of the duty to retreat.
>
> **{¶ 40}** The castle doctrine takes its name from the maxim that a person's home is his or her "castle." *State v. Waller*, 2d Dist. Clark No. 2013-CA-26, 2014-Ohio-237, ¶ 40, citing *State v. Comer*, 4th Dist. Gallia No. 10CA15, 2012-Ohio-2261, ¶ 11, and 4 Blackstone, Commentaries on the Laws of England (Rev. Ed.1979) 223, Chapter 16. The castle doctrine is now codified in R.C. 2901.09(B):
>
> For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who

6

lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

{¶ 41} The castle doctrine does not stand for the proposition — as Martin suggests --that he does not have the burden of proof on self-defense. [footnote omitted] Rather, it sets forth circumstances in which he is not required to retreat, which relates to only one of the elements of self-defense. In other words, the castle doctrine creates a rebuttable presumption in his favor on this one element of self-defense. On the other elements — that the defendant did not create the situation that gave rise to his use of force, and that he had reasonable grounds to believe, and an honest belief, that such force as he used was necessary to protect himself — the defendant still bears the burden of proof. See *State v. Dale*, 2d Dist. Champaign No. 2012 CA 20, 2013-Ohio-2229, ¶ 18, citing *State v. Westfall*, 9th Dist. Lorain No. 10CA009825, 2011-Ohio-5011, ¶ 19 and *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, ¶ 16.

{¶ 42} The trial court's instructions on self-defense extended over 5 pages of the transcript. They included, among other things, that 1) the defendant has the burden of proof on an affirmative defense, including self-defense, by the preponderance of the evidence; 2) the elements of self-defense and of the duty to retreat; 3) how to determine whether the defendant (Martin) had reasonable grounds to believe and an honest belief that he or Busbee was in imminent or immediate danger of death or great bodily harm; 4) the circumstances in which a duty to retreat no longer applies; and 5) the castle doctrine, as it applies to a vehicle. These instructions tracked the Ohio Jury Instructions on self-defense against the danger of death or great bodily harm, the test for reasonableness in self-defense or defense of another, and the presumptions related to self-defense or defense of another in a residence or vehicle (the castle doctrine). *See* 2 Ohio Jury Instructions 421.19, 421.23, and 421.24. The instructions also made clear that, even if the defendant fails to establish an affirmative defense, the State must prove all of the elements of the charged offenses beyond a reasonable doubt.

{¶ 43} After extensive discussions, all of the instructions that Martin requested related to the castle doctrine and defense of another were given. There were also extensive discussions about the manner in which the instructions were to be given, and defense counsel indicated his satisfaction with how these issues were resolved before the proposed instructions were given. The trial court made a diligent effort to provide and did provide all of the relevant instructions to

the jury. Factual questions existed --for the jury to decide --about whether the facts supported the application of the castle doctrine and/or whether all of the elements of self-defense had been established; these questions necessitated a complex set of jury instructions, because the relevant instructions were dependent on the jury's findings with respect to the circumstances surrounding the shooting. We reject Martin's argument that the court jury instructions on self-defense and the castle doctrine were incomplete, inaccurate, or misleading. Moreover, counsel did not object to the instructions that were given, and we find no plain error, as we cannot find that the jury instructions on self-defense contained any obvious defect or affected Martin's substantial rights.

*Martin I*, 2017-Ohio-7431.

The Warden defends Ground One on the merits (Return, ECF No. 11, PageID 1520-21).

Petitioner argues this Ground for Relief in his Reply entirely in terms of Ohio law (ECF No. 21, PageID 1582-87.)

Based on the Second District's decision, the Magistrate Judge concludes Martin's First Ground for Relief should be dismissed for a number of reasons. First of all, the jury instructions were found by the Second District not to be erroneous. The question of what elements are included in a crime or in a defense to a crime is a matter of state, not federal, law. On questions of what the relevant state law is, a federal habeas corpus court is bound by the decisions of the state courts. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*). In this case, the Second District authoritatively interpreted Ohio law and applied it to the facts before it; this Court is bound by that interpretation of Ohio law.

Second, this claim is procedurally defaulted because Martin's trial attorney did not object to the instructions and the manner in which they were given, thereby waiving all but plain error, which the Second District did not find. Ohio law requires a contemporaneous objection in the trial court to trial court error when it is made so that the trial court can correct it. Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to

the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012). An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Id.* at 337; *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Third, because federal habeas review is limited to federal constitutional claims, Ground One does not state a claim for relief since there is no constitutional command about the content of self-defense instructions, including the Castle Doctrine.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Martin asserts he received ineffective assistance of trial counsel when his attorney failed to object to the jury instructions and in various other unspecified ways ("failed to subject the prosecution to any meaningful adversarial challenges").

Martin presented a claim of ineffective assistance of trial counsel to the Second District on direct appeal which decided the claim as follows:

> ***Ineffective Assistance of Counsel***
>
> **{¶ 45}** In his second assignment of error, Martin argues that he was denied the effective assistance of counsel during the cross-examination of Busbee and his own direct examination, because counsel did not ask certain questions which might have bolstered Martin's claim of self-defense. He also contends that counsel's

handling of the jury instructions and of certain testimony about someone who allegedly fled from the scene of the shooting denied him the effective assistance of counsel.

{¶ 46} We review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

{¶ 47} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See id.*; *Bradley* at 142. A debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.).

{¶ 48} With respect to the cross-examination of Busbee, Martin asserts that counsel failed to ask more direct and specific questions about whether he (Martin) had acted to defend Busbee, and therefore failed to "fully establish" his self-defense or defense of another claim. This assertion assumes that Busbee would have answered the questions in a manner that supported Martin's theory of the case. However, Busbee had testified on direct examination that Tisdale was not acting in a threatening manner and was not armed when he approached the car. Her testimony in the State's case also did not support Martin's testimony that she had been fearful, "screaming," or "hollering" when Tisdale approached; she simply stated that she had not unlocked the door because she did not want "drama" between the two men. Defense counsel could have reasonably doubted that Busbee would answer direct questions about whether Martin had been defending her in a manner that would be helpful to the defense, and there is nothing in the record indicating that such responses were likely. As such, we cannot find that he acted ineffectively in failing to ask such questions.

{¶ 49} Martin also argues that defense counsel failed to "establish a key point"" during Martin's direct examination: that he was acting to protect himself or Busbee. We disagree. Martin's version of events, as established through his direct examination, was that

Tisdale had approached the car with a gun, that Busbee had expressed fear of Tisdale, that Tisdale had been angry, and that Tisdale had opened the car door. This testimony supported Martin's theory of the case: that he had acted in self-defense and/or defense of Busbee. We cannot find that any additional or formulaic questions by defense counsel about whether Martin was defending himself or Busbee would have been answered in a certain fashion, were required, or would have affected the outcome of the case.

{¶ 50} Martin also contends that a particular section of the transcript during Soles's testimony created "some question" about the presence of an "unknown individual" in Tisdale's vehicle during the purchase of marijuana, who allegedly "fled" and was "never questioned by police." During the cited testimony (Tr. 289), Tisdale's brother, Soles, makes reference to a "guy named Bama," whom Soles had never met before and whose real name was unknown to him at that time. However, it is clear from the transcript as a whole that "Bama" was McMillin. McMillin testified at trial that his nickname was "Bama," that he had been with Tisdale and Soles prior to the shooting, and that they had purchased marijuana. There was nothing in Soles's testimony to suggest in any way that a person fled from the scene of the shooting and was never identified and questioned by the police. This record simply does not support any plausible argument that trial counsel acted ineffectively in failing to identify another witness.

{¶ 51} Finally, Martin contends that trial counsel was ineffective in his handling of and failure to object to the jury instructions on self-defense. As we discussed under the first assignment of error, trial counsel was very engaged with the trial court during the formulation of the jury instructions, and the instructions that were given were proper and reasonably clear. We find no ineffective assistance related to the jury instructions.

*Martin*, 2017-Ohio-7431.

The Warden also defends Ground Two on the merits, asserting this Court should defer to the Second District's decision on this claim (Return, ECF No. 11, PageID 1521). Martin argues in his Reply that it would have been easy for his attorney to make an objection to the self-defense instruction and counsel could have impeached Elbert Soles and Lisa Busbee with their prior

inconsistent statements (Reply, ECF No. 21, PageID 1587-88)[1].

Unlike the jury instruction claim in Ground One, ineffective assistance of trial counsel is a federal constitutional claim: the Sixth Amendment guarantees a criminal defendant that he will receive the effective assistance of counsel and a violation of that guarantee can result in habeas relief. However, when a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In this case the Second District applied the correct federal constitutional standard for ineffective assistance of trial counsel as adopted in *Strickland v. Washington*, 466 U.S. 668 (1984). Moreover, the application is objectively reasonable. Because the jury instructions were not erroneous, it cannot have been deficient performance to fail to object to them. Martin plainly hoped that Busbee's testimony would be more favorable to his defense, but there is nothing to indicate different examination from trial counsel would have elicited better answers.

Because the Second District's application of *Strickland* was objectively reasonable, it is entitled to deference under 28 U.S.C. § 2254(d)(1). Ground Two should therefore be dismissed.

**Ground Three: Conviction Against the Manifest Weight of the Evidence**

---

[1] In his Reply Martin adverts to the Magistrate Judge's denial of discovery of the "video statements and police report of Ms. Lisa Busbee and Mr. Elbert Soles" and claims "every effort should be review [sic] to get to the truth in this matter." (Reply, ECF No. 21, PageID 1588). The Magistrate Judge denied Martin's Motion for Discovery (ECF No. 14) without prejudice to its renewal after Petitioner had satisfied the threshold requirements for introducing new evidence in habeas created by the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011) (Decision, ECF No. 15). The Magistrate Judge's denial of discovery is pending on Martin's Objection (ECF No. 16).

In his Third Ground for Relief, Martin asserts his convictions for offenses in which Gary Tisdale was the victim are against the manifest weight of the evidence. The Warden notes that the Second District decided this claim on the merits, but also argues this claim is not cognizable in habeas corpus (Return, ECF No. 11, PageID 1521). In his Reply, Martin argues there was insufficient evidence presented by the State to satisfy its burden of proving beyond a reasonable doubt to prove that he was "not acting under the Castle Doctrine [Ohio Revised Code § ] 2901[.]05(B) [a]nd [Ohio Revised Code § ] 2901.09." (Reply, ECF No. 21, PageID 1589). He relies in particular on *Tibbs v. Florida*, *id*. at PageID 1588, citing 457 U.S. 31 (1982), which reiterated the sufficiency of the evidence standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979).

The Second District decided Martin's manifest weight assignment of error as follows:

> {¶ 7} In his third assignment of error, Martin contends that his conviction was against the manifest weight of the evidence.

> {¶ 8} An argument based on the weight of the evidence "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; see *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

> {¶ 9} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v.*

*Lawson,* 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 10} The State's evidence was as follows:

{¶ 11} On the evening of March 26, 2016, after spending some time at their aunt's house in Kettering, Gary Lamar Tisdale and his brother, Elbert Soles, set out in Tisdale's Charger to purchase some "weed" from an acquaintance of Tisdale's named "Bama" (Ellis McMillin) However, McMillin did not have what Tisdale and Soles wanted. McMillin got in the car with Tisdale and Soles to find someone from whom they could make a purchase, which they did.

{¶ 12} Sometime after 9:00 p.m., when Tisdale, Soles, and McMillin were driving around together, they drove past a car in which Lisa Busbee was sitting. Busbee and Tisdale had been in a romantic relationship in the past, and the car in which she sat was parked in front of a house at which Busbee was staying. Busbee was sitting in the passenger's seat of the parked car, and Martin was in the driver's seat. After passing the car and recognizing Busbee, Tisdale did a U-turn and pulled up alongside the car in which Busbee was seated. The cars were then facing in the same direction.

{¶ 13} Tisdale got out of his car and approached Busbee, walking around the back end of the vehicles. According to the testimony of Soles, McMillin, and Busbee, Tisdale was in a "happy" mood, was not behaving in a threatening or aggressive manner, and did not have a gun. These witnesses also testified that Tisdale's car was not parked so closely to Martin's as to prevent Martin from exiting. Tisdale spoke with Martin and/or Busbee through the sun roof of the car, which was open, while standing on the curb; the windows were closed.

{¶ 14} According to Soles, Tisdale said to Martin, "You can't stay away from my girl." According to McMillin, Tisdale asked Busbee why she was "calling him over there if she's in the car with someone else." According to Busbee, Martin already had a gun in his lap when Tisdale approached the car and spoke to him. Similarly, Soles testified that he did not see Martin reach for a gun after they pulled alongside the car.

{¶ **15**} Without warning, Martin pointed his gun at Tisdale through the sun roof and fired. Tisdale was shot in the chest, but he managed to return to his car and to pull away in the car with Soles and McMillin. It was not immediately clear to Soles (who was in the front passenger seat) whether Tisdale was hit, but Soles saw a "flash from behind" and yelled "he's chasing us." Tisdale "hit the gas," but almost immediately started driving erratically and lost control of the car. Soles told Tisdale to stop the car as it approached a busy intersection, but Tisdale did not respond. Soles tried to control the vehicle, without success. A few blocks from Busbee's residence, the vehicle crashed into a tree across the street from a fire station, and the airbags deployed.

{¶ **16**} Soles jumped out of the car, ran to the driver's side, partially pulled his brother from the car, and checked for breathing. Soles testified that Tisdale was still breathing but could not talk. Firefighters quickly responded from across the street; they detected no pulse but started CPR. Having observed no signs of life, the fire department did not transport Tisdale to a hospital.

{¶ **17**} After receiving 911 calls and responding to the scene of the crash, police officers began to investigate the shooting. They interviewed Soles and McMillin and sought to determine the location of the shooting. At the scene of the crash, officers observed that Tisdale's car had lost a tire and that no guns or ammunition were found on Tisdale's body. Between the scene of the crash and the approximate location of the shooting, officers found one spent shell casing in the street and a freshly damaged curb. Busbee approached an officer who was collecting evidence in the street near the shooting and provided more specific information about where and how events had transpired. That police officer found a broken cell phone near the curb where Martin's car would have been parked at the time of the shooting.

{¶ **18**} A short time later, Martin called the police and offered to surrender. Several police officers responded to his home, where he was taken into custody. A handgun was found on the passenger seat of Martin's vehicle, and there was a hole in the passenger side of the front windshield of his car.

{¶ **9**} Busbee, age 27, testified that she had known Martin since she was a teenager; they had been neighbors, and they also had a sexual relationship when she was 18. Busbee testified that she had no romantic relationship with Martin in March 2016, but that Tisdale and Martin had "had words" in the past. However, according to Busbee, she saw Martin every morning and every night in early

2016. He provided her with cigarettes and orange juice when they saw each other and, on the night in question, he was also going to give her some money to go to laser tag for her daughter's birthday, which was that day.

{¶ 20} According to Busbee, Martin and Busbee were parked in front of her cousin's house (where she was staying) smoking a "blunt" (marijuana), when Tisdale approached. Busbee testified that Martin removed the gun from his glove box and locked the car doors while Tisdale was making the U-turn, and that Martin did not load the gun in her presence at that time. She also testified that Martin was talking on the phone, telling someone that he did not want to come to a club because he did not want "to shoot nobody."

{¶ 21} Busbee testified that, when Tisdale approached the car, Tisdale said "You still trying to f*** my b****." According to Busbee, Tisdale used a regular voice, and his tone was not angry, aggressive, or threatening. She also testified that Tisdale did not try to get in through the sun roof or try to reach for Martin through the roof; Tisdale did try to open her door, but it was locked, and she had not unlocked it because she "didn't want drama." Busbee said Tisdale did not have a gun in either hand when he was standing outside the car.

{¶ 22} Busbee testified that Martin's "gun just went off" almost immediately after Tisdale's statement. Busbee stated that Martin had held the gun up above the sun roof. In the immediate aftermath of the shooting, Busbee did not know if Tisdale had been hurt or where he had gone, although she saw his car drive away. She was "scared" and ran into her cousin's house, taking some of her children with her from the porch. She heard a second shot when she was on her porch trying to get into the house.

{¶ 23} McMillin testified that he remained in the back seat of Tisdale's car while Tisdale approached Busbee in Martin's car. McMillin testified that the gunshot happened without warning, that the conversation had been in normal tones prior to that time, and that Tisdale had not tried to get into Martin's car. McMillin further stated that, after the shot was fired, Tisdale walked back to his car "like nothing," and it was not immediately apparent that he had been shot. McMillin doubted that Tisdale even realized right away that he had been shot. McMillin testified that, as they drove away, he (McMillin) dropped to the floorboard of the car because two additional shots were fired. When the shots ended and McMillin sat back up, he noticed that Tisdale had "lumped down in the seat" and realized that Tisdale had been shot. Soles and McMillin then tried

to control the car and to get Tisdale's foot off the gas pedal as they careened down the street and through a busy intersection, striking a pole and a tree.

{¶ 24} McMillin testified that Tisdale did not have a gun on the day of the shooting and that Tisdale "never carried a gun." McMillin also was not armed at the time of the shooting. McMillin was not able to identify Martin as the shooter from his observations at the time of the shooting; he had not paid attention to Martin before the shooting, and did not have an opportunity to observe him afterward.

{¶ 25} Busbee testified that, when she heard about the car crash and saw police officers nearby, she went to talk with police officers who were at Second and Kilmer streets, near her cousin's house and the scene of the shooting. Police Officer Angela Woody testified that she was approached by Busbee as she investigated the shooting. Woody stated that Busbee was very upset and shaking, and that she directed Woody to where the cars had been parked at the time of the shooting. Woody observed a broken cell phone on the ground, "right next to where Ms. Busbee indicated that the car had been parked." Woody did not find any casings, blood, gun, or other evidence that she associated with the shooting.

{¶ 26} Voicemail messages that Martin had left on Busbee's phone the morning of the shooting were introduced into evidence. Martin's statements in these messages included the statement: "Would you answer the phone when I call you? F*** that n***** you're with. He ain't doing s*** but leaving you with a wet a**."

{¶ 27} Keeara, [footnote omitted] age 16, was good friends with one of Busbee's relatives who lived at Busbee's cousin's house, and she (Keeara) was at the house for several hours the night of March 26, 2016. Keeara testified that, at a certain point, she was aware that Busbee was outside with "Mike" (Martin), who was giving Busbee money for her daughter's birthday party. Keeara then heard a gunshot, outside and close, and opened the front door because she knew Busbee was outside. Busbee rushed through the door with a couple of her children, and Keeara heard another gunshot, which sounded like it also came from the front of the house. Keeara described Busbee as "paranoid and upset," and Busbee told Keeara that Martin had fired a shot out of the sun roof of the car.

{¶ 28} A Dayton Police Department evidence technician, Ronald Christoffers, testified about the evidence he collected in the case, which included the evidence collected from Tisdale's and Martin's cars, both of which were towed to the police department. According

to Christoffers, two shell casings were recovered: one in the street a short distance from Busbee's home and one on the floorboard of Martin's car. A semi-automatic pistol with one bullet remaining in the chamber was also found on the passenger seat of Martin's car. No bullet holes were found in Tisdale's vehicle or in the tire that was lost when the car hit a curb. There was a bullet hole in the passenger side windshield of Martin's car, and Christoffers's examination of the windshield indicated that the shot was fired from inside the car.

{¶ 29} Martin was the only witness to testify for the defense.

{¶ 30} Martin testified that he went to Busbee's house at about 9 p.m. on the day of the shooting. They sat in his car while Busbee smoked a blunt, but Martin did not partake because of the poor quality of the blunt (it contained marijuana seeds). According to Martin, he did not have a sexual relationship with Busbee at that time, but he had in the past. He knew that she had a "Lamar" tattoo (Tisdale's name) on her chest and knew of their past relationship, but Martin had never met Tisdale.

{¶ 31} Martin testified that a Charger pulled up alongside his car with its lights off; he had not seen the car make a U-turn beforehand. The Charger parked within 12 to 18 inches of Martin's car, such that Martin could not exit his vehicle. The driver of the Charger then walked around the back of the two vehicles. Martin testified that he saw a firearm in the man's hand in the driver's side mirror as the man walked behind the cars; he saw the firearm again when the man reached the passenger's side of his car, and the man (Tisdale) opened the door about a quarter of an inch. According to Martin, Busbee was "looking around * * * anxiously," trying to lock the door, and "screaming and hollering 'he's going to kill me.'" Martin also testified that he heard Tisdale say the words "b****" and "kill."

{¶ 32} Martin testified that he fired at Tisdale through the sun roof with a firearm that he had beneath the armrest inside his car. Martin believed that he had hit Tisdale, and he testified that "all aggression ceased" after the shot was fired. Martin stated that he had been aiming for Tisdale's shoulder, but hit him in the chest because Tisdale had reached for the passenger door. Tisdale then walked back to his car. Martin stated that he fired another shot into the air after Tisdale walked back to his own car, because he thought someone else was getting out of Tisdale's vehicle. Then Tisdale drove away.

{¶ 33} Martin stated that he did not follow Tisdale's car but that he did pull forward to a stop sign and, as he tried to turn right with the

firearm still in his hand, it "accidental[ly] discharge[d]." According to Martin, this was the shot that went through the windshield of his car.

{¶ 34} Martin acknowledged that he had left the voicemail messages on Busbee's phone that were played at trial. He explained that he had to talk "rough" to Busbee, rather than "in an intelligent manner," to get through to her, and he pointed out that his messages had prompted her to call him back. However, Martin denied that he had a phone conversation while sitting in the car with Busbee during which he said that he "might have to shoot someone" if he went to particular clubs; he said this statement was part of Busbee's "vivid imagination."

{¶ 35} Martin acknowledged that he had not told the police officers who interviewed him on the night of the shooting that Tisdale had tried to open or had opened the door to his (Martin's) car. He explained that he had been "disoriented," "confused," and had "had a bad day."

{¶ 36} Based on this evidence, the jury found Martin guilty of the murder and felonious assault of Tisdale, discharge of a firearm on or near a prohibited premises, and improper handling of a firearm. As described above, several witnesses to the shooting testified that it was unprovoked and that Tisdale was not armed or acting in an aggressive manner when he was shot. The testimony of these witnesses, if believed by the jury, supported Martin's conviction and undercut his assertion that he had acted in self-defense. Several witnesses also testified that Martin fired additional shots from his car after Tisdale was shot, a fact which Martin admitted (once in the air and once, he said, accidentally) in his own testimony. We cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice in convicting Martin of the offenses that it did.

{¶ 37} The third assignment of error is overruled.

*Martin*, 2017-Ohio-7431.

A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986). However, a state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin*, 258 F. App'x 761, 762 (6th Cir. 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist.

LEXIS 65082 (N.D. Ohio May 10, 2011), report and recommendation adopted at 2011 U.S. Dist. LEXIS 60434 (N.D. Ohio Jun. 7, 2011); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131, at *12 (S.D. Ohio Apr. 27, 2011) (Merz, Mag. J.), report and recommendations adopted at 2011 U.S. Dist. LEXIS 54132 (S.D. Ohio May 20, 2011) (Dlott, C.J.).

The Magistrate Judge treats Martin as having preserved his insufficient evidence claim by making a manifest error claim on direct appeal. However, this Court must defer to the Second District's decision unless it is an unreasonable application of *Jackson* or an unreasonable determination of the facts based on the state court record. 28 U.S.C. §§ 2254(d)(1)-(2).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, No. 3:03-po-2, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio Oct. 12, 2007) (Rice, J.). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S.Ct. 709 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. No 104-132, 110 Stat. 1214) (the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008); *accord Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*); *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(*en banc*);. Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595

F.3d 647, 656 (6ᵗʰ Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S.
> 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012) (*per curiam*); *Parker*, 567 U.S. at 43. The federal

courts do not make credibility determinations in reviewing sufficiency of the evidence claims.

*Brooks v. Tennessee,* 626 F.3d 878, 887 (6ᵗʰ Cir. 2010).

A habeas court cannot consider post-trial evidence in deciding a *Jackson* claim. *McDaniel*

*v. Brown*, 558 U.S. 120 (2010).

> In order to demonstrate that the state court's decision was based on
> an unreasonable determination of the facts under § 2254(d)(2), a
> petitioner must both establish the "unreasonable determination" and
> show "that the resulting state court decision was 'based on' that
> unreasonable determination."

*Titlow v. Burt*, 680 F.3d 577, 585 (6ᵗʰ Cir. 2012), rev'd on other grounds in *Burt v. Titlow*, 571

U.S. 12 (2013), quoting *Rice v. White*, 660 F.3d 242, 250 (6ᵗʰ Cir. 2011).

"On habeas review pursuant to § 2254, a 'court faced with a record of historical facts that

supports conflicting inferences [and *a fortiori* findings] must presume—even if it does not

affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the

prosecution, and must defer to that resolution.'" *Blackmon v. Booker*, 696 F. 3d 536, 538 (6ᵗʰ Cir.

2012), quoting *McDaniel*, 558 U.S. at 133.

Martin's argument seems to be that his own testimony (and he was the sole defense witness) was enough to overcome all the State's witnesses who, for various reasons, he claims should not be believed. But questions of credibility are not for the habeas court to resolve – they were already resolved by the jury.

Petitioner's Third Ground for Relief should be dismissed on the merits.

## Ground Four: Ineffective Assistance of Appellate Counsel: Failure to Raise Plain or Structural Error Assignments

In his Fourth Ground for Relief, Martin asserts he received ineffective assistance of appellate counsel when his appellate attorney did not claim either plain error or structural error with respect to the jury instructions issue. As is proper under Ohio law, Martin submitted this claim as part of his Application for Reopening under Ohio R. App. P. 26(B) and the Second District decided it on the merits:

### Structural or Plain Error Regarding Jury Instructions

{¶13} Martin's first argument relates to appellate counsel's "fail[ure] to raise structural or plain error" related to the jury instructions on self-defense.

{¶14} As discussed above, the issues Martin raises related to the jury instructions given at trial on the castle doctrine and self-defense were addressed on direct appeal; we found no error in the substance of these instructions or the manner in which they were delivered to the jury. In his application for reopening, Martin seems to suggest that, if appellate counsel had characterized these errors as structural error or plain error, the outcome of the appeal might have been different.

{¶15} The arguments set forth in Martin's application for reopening mirror the arguments in his first assignment of error on direct appeal and in his application for reconsideration. Because we have rejected Martin's argument that the jury instructions were incomplete,

inaccurate, or misleading and found no error in the instructions, there is no basis for a finding of plain error.

{¶16} A structural error "'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver v. Massachusetts*, __ U.S. __, 137 S. Ct. 1899, 1907, 198 L.Ed.2d 420 (2017). Martin has not set forth any basis for a finding of structural error. Moreover, the United States Supreme Court has held that the structural analysis applies to a "very limited class of cases" and that, in most instances, failure to properly instruct a jury is not structural error because it does not "necessarily render a trial fundamentally unfair." *Neder v. United States*, 527 U.S. 1, 8-10, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999). Thus, even if there were error in the jury instructions (and we find that there was not), such error would not be structural error.

{¶17} Appellate counsel was not ineffective for not raising additional arguments related to the jury instructions.

(Decision and Entry, State Court Record, ECF No. 10, PageID 248-49).

The Warden asserts this Second District decision is entitled to deference under AEDPA (Return, ECF No. 11, PageID 1524-25). In his Reply Martin reargues his claim about his entitlement to shoot Tisdale under the Castle Doctrine (ECF No. 21, PageID 1591-93).

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Penson v. Ohio*, 488 U.S. 75 (1988); *Evitts v. Lucey*, 469 U.S. 387 (1985); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987). "To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, citing *Wilson*, 515 F.3d at 707.

The Magistrate Judge concludes that the Second District's decision on this claim is entitled to deference under 28 U.S.C. § 2254(d)(1) because it is a reasonable application of *Strickland*. The Second District reviewed Martin's jury instruction claim on direct appeal and found there was no error. Plain error review under Ohio R.Crim.P. 52 is only necessary when an appellate court does not reach the merits because of a procedural default in the lower court. It cannot be ineffective assistance of appellate counsel to fail to raise an issue which is itself without merit, as the Second District concluded here.

The Second District's application of the structural error doctrine was also not unreasonable. Adding the label "structural error" would not have made a difference on appeal because there was no error in the instructions. The Fourth Ground for Relief should therefore be dismissed with prejudice.

## Ground Five: Ineffective Assistance of Appellate Counsel for Not Raising As Error Martin's Absence from the Jury Instructions Conference

In his Fifth Ground for Relief, Martin asserts he received ineffective assistance of appellate counsel when his appellate attorney did not assign as error the fact that Martin was not present for the jury instruction conference. The Warden defends this Ground on the merits (Return, ECF No. 11, PageID 1528-31.) Martin makes his argument on this Ground for Relief under the heading for Ground Four in his Reply, noting that the trial court failed to address him in person about waiving his presence at the conference and failed to obtain a valid written waiver (ECF No. 21, PageID 1594-95).

The Second District considered this claim on the merits in deciding the 26(B) Application. Defendant's Right to be Present at Critical Stages of Proceedings

{¶19} Second, Martin argues that appellate counsel was ineffective in not arguing that trial counsel was ineffective for failing to protect his constitutional right to be present at every stage of the criminal proceedings, namely, at in-chambers discussions of the jury instructions. He claims that if he had been present, "he could have shined more light on the fact" that he had no duty to retreat under the castle doctrine and that the State had the "burden of disproving self-defense." He does not suggest what he would have added to his trial counsel's arguments.

{¶20} Martin acknowledges in his application that, during the in-chambers discussion of jury instructions, his attorney told the court that Martin had waived his right to be present for the discussion. Martin denies that he waived his right to be present. This argument would necessarily rely on matters outside the record, i.e., Martin's discussions with his attorney. Evidence outside the record cannot support a claim for ineffective assistance of appellate counsel for purposes of App. R. 26(B), and thus does not provide a basis for reopening an appeal. *State v. Landrum*, 8th Dist. Cuyahoga No. 104511, 2017-Ohio-7240 ¶ 17.

{¶21} Additionally, it is not apparent that Martin's right to be present at critical stages of the proceedings extended to in-camera discussions of primarily legal matters. See, e.g., *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1175 (2000) (holding that, although the oral delivery of jury instructions in open court is a critical stage of trial at which defendant has a right to be present, defendant does not have a right to be present at an in-chambers discussion regarding the trial court's response to a jury question, which was then answered by a note and not in open court); *State v. Blanda,* 12th Dist. Butler No. CA2013-06-109, 2014-Ohio-2234 (in-camera discussion of jury questions and appropriate written response was not a critical stage of the proceedings at which defendant had a right to be present); *State v. Woods,* 8 Ohio App. 3d 56, 61, 455 N.E.2d 1289 (8th Dist. 1982) (defendant's right to be present at every stage of trial does not include the right to personally participate during an in camera inspection of witness statements, where defendant was represented by legal counsel).

{¶22} Appellate counsel was not ineffective for failing to argue that Martin was absent for critical portions of the proceedings, in violation of his constitutional rights.

(Decision and Entry, State Court Record, ECF No. 10, PageID 250-51 (footnote omitted)).

This decision is not an unreasonable application of clearly established Supreme Court

precedent. First of all, the record makes it clear that the trial judge was prepared to have Martin in the discussion but his trial attorney said his presence was waived.

One possibility, the one the Second District mentioned, is that there was an off-record discussion between Martin and his trial lawyer at which Martin said he wanted to be present and the trial attorney ignored his wishes. As the Second District notes, this is a matter not reflected in the record; consequently, it would have to be raised in a petition for post-conviction relief.

A second possibility is to understand trial counsel as himself waiving Martin's presence. This would be one of the acts considered to be within the authority of a trial attorney as the client's agent. Unlike the right to trial by jury or the right to stand on a not guilty plea, the right to be present at a jury instructions conference is not one that has to be waived by the defendant in person in open court or by a writing.

In any event Martin has not shown through any clearly established Supreme Court precedent that excluding a defendant from a jury instructions conference violates his constitutional right to be present at all critical stages of his case. For example, there is no constitutional right for a defendant to be present at a jury view. *Snyder v. Massachusetts,* 291 U.S. 97 (1934), overruled in part on other grounds by *Malloy v. Hogan*, 378 U.S. 1 (1964). Jury instruction conferences with only attorneys present are common practice in federal court because they involve only discussions of the law. The comments Martin says he would have made during the conference would not have been helpful, given the Second District's conclusion that he incorrect on the law. Ground Five should be dismissed with prejudice.


**Ground Six: Ineffective Assistance of Trial Counsel: Failure to Impeach Busbee and Soles with Prior Inconsistent Statements**

In his Sixth Ground for Relief, Martin claims his trial attorney provided ineffective assistance of trial counsel when he failed to impeach State's witnesses Busbee and Soles with their inconsistent pretrial statements.

The Warden defends in part by pointing out Martin's procedural default of this claim: by failing to submit any evidence of the inconsistent prior statements, Martin failed to comply with the requirement for a post-conviction petition that it be supported by materials outside the direct appeal record. *Martin II*, 2018-Ohio-3505 at ¶ 17.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015) *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>                    . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138 (6th Cir. 1986); accord: *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can

overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio does have a procedural rule requiring evidentiary materials to be provided for a petition for post-conviction relief. Ohio Revised Code § 2953.21. That rule was enforced against Martin as is shown by the quotation from the Second District's opinion above. The rule is an adequate state procedural rule independent of federal law in that it protects Ohio's criminal *res judicata* rule: if a defendant could raise again in post-conviction the same claims of ineffective assistance of trial counsel that he could have raised on direct appeal, the *res judicata* bar enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), would be completely undermined. Ohio's doctrine of *res judicata* in criminal cases, enunciated in *Perry*, is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994) (citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001) (Smith, J.). "[P]resentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*." *State v. Lawson*, 103 Ohio App. 3d 307, 315 (12th Dist. 1995), citing *State v. Smith*, 17 Ohio St. 3d 98, 101 n.1 (1985). But that is what the Second District held Martin did not do. Martin offers no purportedly excusing cause and prejudice in his reply.

The Second District offered an alternative analysis of this claim on the merits, noting that some of the proposed cross-examination was not relevant and some of Busbee's and Soles's trial testimony was more favorable to Martin than the prior alleged statements. *Martin II*, 2018-Ohio-3505, at ¶ 18. Martin has not shown this conclusion is an unreasonable application of *Strickland* to the facts of this case.

Ground six should be dismissed with prejudice as barred by procedural default and on the merits in deference to the Second District's decision.

**Ground Seven: Ineffective Assistance of Trial Counsel: Failure to Clarify the Content of a Voicemail Left by Martin on Busbee's Cell Phone**

In his Seventh Ground for Relief, Martin claims he received ineffective assistance of trial counsel when his trial attorney failed to clarify that, in a voicemail left on Busbee's telephone, he was referring to the father of Busbee's youngest child and not to Tisdale when he said "Fuck that nigger you're with. He ain't doing shit but leaving you with a wet ass."[2] As Respondent points out, Martin himself was cross-examined about this voicemail at some length and never did anything to "clarify" that he was talking about someone other than Tisdale (Return, ECF No. 11, PageID 1551).

The Second District found this claim procedurally defaulted on the same basis as Ground Five: failure to support it with any materials outside the direct appeal record. For the reasons given with respect to Ground Five, the Magistrate Judge also concludes the claim is procedurally defaulted.

The Second District alternatively decided this claim on the merits, pointing out that it could well have been sound strategy not to inquire further into Martin's relationship with Busbee: the "clarification" Martin claims should have been made would have shown "he was angry with Busbee over her relationship with another man." *Martin II*, 2018-Ohio-3505, at ¶ 22. Even assuming trial counsel knew the reference was to someone besides Tisdale (and Martin provided

---

[2] The reader may be offended by the Magistrate Judge's use of the actual language Martin used in the voicemail rather than abbreviations as they were reproduced in the transcript. As a judge, the undersigned has always believed the record should reflect what actually happened. Martin did not say "F___ that N word you're with." He said what is quoted in the text.

the state courts with no proof to that effect), a strategic decision not to ask that question on redirect is well within the scope of counsels' professional discretion.

Ground Seven should be dismissed as procedurally defaulted and meritless.

## Ground Eight:  Prosecutorial Misconduct

In his Eighth Ground for Relief, Martin claims his conviction is infected with prosecutorial misconduct because the Assistant County Prosecutor trying the case knew that Busbee and Soles gave untruthful testimony but failed to correct it.

The Second District found this claim procedurally defaulted on the same basis as Grounds Six and Seven:  failure to provide any evidentiary support.  *Martin*, 2018-Ohio-3505, at ¶ 23.  For the reasons given above, this procedural default bars Ground Eight.  Moreover, on the merits, the Second District found no basis in the record to suggest either witness committed perjury or that the prosecutor knew they were doing so.  *Id.*

Martin says nothing in his Reply to show that this conclusion is an unreasonable determination of the facts based on the trial court record.  Accordingly, Ground Eight should be dismissed as procedurally defaulted and meritless.

## Conclusion

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and

that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should

not be permitted to proceed *in forma pauperis*.


February 14, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.